GEORGE L. COURTNEY, Plaintiff, *v.* HELEN ALICIA McARDLE and UNION TRUST COMPANY of Albany, N. Y., as Executors of the Last Will and Testament of PATRICK J. McARDLE, Deceased, Defendants.

(Supreme Court, Albany Special Term, December, 1917.)

Depositions — motion to suppress, when granted — examination of expert accountant — actions — partnership — witness — accounting — evidence.

Upon motion to suppress the deposition of an expert accountant as a witness for plaintiff in an action to establish a copartnership, which has been decreed, and for an accounting, counsel for defendants, after questioning the witness, without the aid of an expert, as to the general plan and scope of his work as

accountant, stated that he had cross-examined the witness as well as he could and to the full extent of his ability and objected to any further postponement of the hearing except for the purpose of reducing it to writing so that the witness could sign it and insisted that the examination be closed then. The hearing was adjourned against the objection of counsel for several days at which time the witness signed the testimony, which the referee certified, and on the same day the witness, who was a British subject, went to Europe, where he joined the colors and was killed in action. *Held,* on a consideration of all the facts and circumstances, justice required a determination that the deprivation of a further, adequate and proper cross-examination of the witness was not because of the fault or waiver or negligence on the part of defendants or their attorneys and that their motion to suppress the deposition of the witness should be granted.

Motion to suppress the deposition of a witness sworn for the plaintiff.

· Edgar T. Brackett (William E. Bennett, of counsel), for plaintiff.

DuBois & McDermott (Pierre E. DuBois, of counsel), for defendants.

Rudd, J. The defendants move to suppress the deposition of William S. McKay, a witness sworn for the plaintiff, taken pursuant to an order granted by the Saratoga county judge before a referee.

The order for the examination of the witness McKay was served on defendants' attorneys September 24, 1914. The date for the examination was fixed for October 1, 1914.

An order issued on the 26th of September, 1914, requiring plaintiff to show cause at a Special Term to be held at Kingston on the 3d day of October, 1914, why the order for the examination of witness McKay on behalf of the plaintiff should not be set aside upon several grounds named in the motion papers, one of

which was that the defendants would be practically deprived of their right to cross-examine witness McKay, in that sufficient and reasonable time was not given to defendants in which to prepare for the necessary cross-examination.

At the Special Term Mr. Justice Hasbrouck denied defendants' motion to vacate the order for the examination of witness McKay, but imposed certain conditions as follows:

1. Plaintiff may proceed with the examination on Monday, October 5, 1914. (The second day after the making of the order by Justice Hasbrouck.)

2. That if the said witness McKay shall not depart the country or join the English colors in the present war, or if, having thus departed, he does not return to this jurisdiction for cross-examination upon defendants' demand made at or before the time when the testimony on both sides is otherwise closed, that then, and in either event, the defendant may, and he is hereby granted leave to, move this court for an order to suppress such examination and to strike the same from the record of the case, upon the ground that he has been injured and prejudiced with respect to his right of cross-examination by said order and proceedings. But it is not intended hereby to decide whether the defendant is or will be injured or prejudiced by such proceedings in or respecting his said right or otherwise, that question to be determined upon the merits upon the defendant's said motion, if one be made.

That motion is made and now must be determined, and as the Special Term stated it must be determined upon the merits, having in mind and in view whether or not upon all the conditions existing the defendants have been injured or prejudiced in respect to their right to cross-examine the witness McKay.

We are not here to review the order of the Special Term, Mr. Justice Hasbrouck. We are, however, to determine, as in said order suggested, whether the defendants are or will be injured and prejudiced in respect of their not having been afforded a proper, suitable and adequate opportunity for the examination of the witness McKay.

The history of this litigation is interesting. The action, commenced in 1895 to establish a copartnership, which has been decreed, and for an accounting between those found to be the partners, has for over twenty-two years been dragging its slow length through the courts. From a somewhat intimate knowledge of the methods we are free to say that the length of years which have passed since the action was brought is not altogether the result of the courts' delay, but it is to be attributed rather to a marked deliberate effort on the part of all who have been interested in and for those immediately concerned.

We are in this motion faced with a situation which seems clearly to be the result of the same methods heretofore prevailing.

The cause was tried for the first time seven years after commencement. Decision was rendered in December, 1903, by Mr. Justice Cochrane and interlocutory judgment thereon was entered thirteen months thereafter. Six years elapsed before the appeal from such judgment was brought on before the Appellate Division, which resulted in an affirmance. The judgment of affirmance was entered in 1910 and granted an accounting. No real steps were taken in the matter of the accounting until four more years had passed, which brings us down to the summer of 1914, at which time an accountant named McKay began the examination for the plaintiff of the books and papers of the copartnership, which had for several years been

deposited in the office of the clerk of Albany county for the purpose of examination.

The examination by the accountant, McKay, with two men assisting him occupied four months during the summer of 1914 and in the fall of that year it was proposed by the plaintiff to take the testimony of accountant McKay in the form of a deposition. An order was made directing the examination to proceed October 1, 1914.

It seems that on the 23d day of August, 1914, McKay, the witness, who was a British subject, was notified of his call to the colors, that he immediately went to Montreal and upon his return notified the attorneys for plaintiff, on the thirty-first of August, that he would be obliged to leave the United States. Three weeks thereafter passed before the plaintiff took any steps to have the examination of McKay taken and his testimony perpetuated.

As before stated, his examination, fixed for the first of October, was finally commenced under the order of Justice Hasbrouck on Monday, the 5th of October, 1914.

The direct examination of the witness McKay, in the oral testimony by him given, covered fifty-three pages of testimony and there were introduced in evidence exhibits and schedules in great number, with a mass of detail of figures, facts and conclusions, the result of an examination of books by an expert accountant, aided by two assistants, the value of whose services are fixed at several thousand dollars, and concerning which examination witness McKay testified that he had been engaged upon the books since May last, and that in tabulating the result of the examination his work had been extremely difficult because such books were not scientifically kept and several were missing.

Concerning the character of the work done and the

material which was the subject of the examination, it appears by the affidavit of one of the counsel representing the plaintiff, who had examined the books of account in question, that they are entirely unintelligible to any one but a certified accountant or bookkeeper, and further that the books contain the details from which the results of the business may be computed and shown, but that the computation in showing such results must be made by an especially and highly qualified accountant or bookkeeper, and cannot be made by any court or lawyer without such special qualifications, and then only after many months of exhaustive labor.

The witness McKay also characterized the work which he was called upon to do by stating, under oath, that it was his opinion that it is impossible for any person, without being specially qualified as an expert accountant or expert bookkeeper, to tabulate or classify or in any way make intelligible the facts which appear from said books; that the books do not contain any inventory account or any account of profit and loss, or any account which shows the results of the business as to its profits and losses or as to any increase or decrease in inventory.

That such tabulation and classification requires special and expert knowledge and could not be done by any one without such special or expert knowledge.

At the close of the taking of the witness McKay's testimony by the direct examination of the plaintiff's counsel, counsel for the defendants entered upon a cross-examination which was general in its character, developing principally and only the general plan and scope of the work of the accountant McKay.

At the end of such oral examination counsel for the defendants stated that he had cross-examined this witness as well as he could and to the full extent of his ability, and that he objected to any further postpone-

ment of the hearing except for the purpose of reducing it to writing so that the witness could sign it. Counsel for the defendants insisted that the examination be closed then.

The counsel for the plaintiff asked the referee to adjourn the hearing until Thursday afternoon, October 8, 1914, for the purpose of permitting the witness to sign his testimony and for such further examination or cross-examination as might be deemed necessary.

Counsel for the defendants objected to it, insisting that under the order of the county judge of Saratoga county and of Mr. Justice Hasbrouck it be continued then, and if counsel had no further question to ask that it be closed.

The referee adjourned the hearing until Thursday, October 8, 1914, at which time the witness signed the testimony, which is certified by the referee.

On the day when McKay, the witness, signed the deposition, October eighth, he left this jurisdiction, went to Europe, joined the colors and was killed in action.

The question here presented is, shall an order issue for the suppression of the deposition of witness McKay because of the failure of opportunity to the defendants for the cross-examination of the witness.

A party litigant cannot be deprived of the opportunity to exercise his right to cross-examine a witness, who has given evidence under direct examination, except only through his own laches or waiver.

The opportunity must be afforded. The trial must be so ordered that each party may if he will exercise within bounds the right to cross-examine to the end that development may be had of the real probative force and strength of the testimony given by the witness.

The refutation by one witness of the testimony

of another does not have the force as does the
development on cross-examination by demonstration of
improper conclusions reached by a witness whose testi-
mony given on direct examination would otherwise
possibly have been controlling.

If the opportunity to cross-examine is afforded and
the party does not choose to exercise that right the
consequences may fall upon him and not upon his
adversary.

If a party has had an opportunity to cross-examine
and declines he has had all the benefit to which he is
entitled.

Starkey on Evidence says: " If a party might have
had the benefit of a cross-examination in the course of a
judicial proceeding it is the same thing as if he had
actually availed himself of the opportunity."

The deprivation of the right to cross-examine must
be the result of misconduct of the witness or party in
whose behalf the testimony thus taken has been offered
or because of the sickness or death of the witness.

The contention here is that the right to cross-examine
the witness McKay was lost to the defendants through
the alleged misconduct of the plaintiff in failing to
present the testimony of the witness McKay within
such time as would enable the defendants to conduct
such a cross-examination as they were entitled to have.

The plaintiff insists that, because the defendants did
not continue the cross-examination of the witness
McKay during the few days which elapsed between the
day of his examination and his departure from the
jurisdiction, therefore the right of defendants has
been waived and lost.

Upon the argument the plaintiff contended that if
the trial had been before a jury the defendants
would have been called upon to take up immediately

the cross-examination and to continue the same uninterruptedly until completed.

The difficulty with that contention is that the court is here called upon to exercise in the consideration of this motion a judicial discretion, and in the exercise thereof it must be realized that this case was not on trial before a jury, but that it was such a case as the law contemplates could not be tried before a jury, and cannot be tried continuously from day to day, as the record of this case certainly emphasizes in large measure, and to an extravagant extent.

The cross-examination of a witness who testifies to a fact by reason of his hearing or seeing that which may throw light upon the subject under consideration is one thing. The cross-examination of an expert accountant, whose testimony is presented in the form of conclusions and calculations from books which no layman could understand or comprehend, from records imperfectly kept, from details not scientifically recorded, whose work, with the aid of two others, covered a period of four months, presented in the form of schedules and exhibits in great numbers and placed upon the record, is quite another thing.

In the trial of an ordinary issue, involving a question of fact, even if scientific details are interwoven, which in the trial of the issue would to a careful counsel be readily anticipated, it is quite easy to determine whether the counsel by failing to cross-examine, irrespective of what statement he makes, has waived his right.

A cross-examination of the witness McKay to have demonstrated the accuracy or inaccuracy of his conclusions, as to the story which these books of account told, as to the relation of the parties, must have been comprehensive, thorough and complete to have given to the referee that which would guide him in the deter-

2

mination which he was called upon to make, to say nothing as to the rights which the defendants had, to show error in the conclusions to which the witness McKay as an expert accountant had reached.

A partial cross-examination of the witness here under consideration would have been of no avail.

The plaintiff calls to our attention the fact that an expert accountant, Hourigan, in the employ of the defendants, was familiar with the books. It is true, as appears from the papers, that Mr. Hourigan had examined the books from time to time but it cannot be said that therefore, and by reason thereof, he was familiar with the mass of detail of conclusions and of facts set forth by the witness McKay in the schedules by him presented.

The counsel for the defendants, this court well understands, must be aided in large measure in the preparation for the cross-examination of a witness such as McKay by an expert accountant who can analyze and unravel the figures in the schedules, which can only be done in connection with an examination by the expert of the books and records from which the witness McKay drew the conclusions by him reached.

This is an unfortunate situation particularly in this endless litigation. It is one, however, for which the defendants here are not responsible, and it hardly seems as if the plaintiff was responsible. It is an unfortunate episode.

We regret the expenditure of money required in the employ of the witness McKay and his assistants, if the same is lost by reason of the elimination of the testimony presented by him to the referee, but in order to save the plaintiff the money thus expended we cannot be called upon to do an injustice to the defendants.

The plaintiff's counsel knew in August that McKay would be obliged sooner or later to leave the country.

If his testimony had then been taken, even if it was not completed, there would certainly have been opportunity for proper and adequate cross-examination. That necessity may not have occurred to the plaintiff, but the whole situation has developed a condition with which we must deal, having in mind the interests of all, so far as it is possible.

The Court of Appeals in *People* v. *Becker,* 210 N. Y. 305, quoting from Wigmore on Evidence, says: " The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience.''

That seems to this court to be the test.

Regretting the expenditure of time and money, the unfortunate taking off of the man who held duty to his flag before all considerations, and who therefore cannot return to us, it certainly seems that the testimony in question covered by the deposition should not remain a part of the record, even though the defendants through their counsel did not attempt to continue the cross-examination of the witness during the few remaining hours when he was to be within the jurisdiction, but who, on the other hand, stated before the examination, during the examination, before the motion to set aside the order for the examination, and since, consistently and squarely, objections to the taking of the testimony at that time, because of the anticipation, by reason of the departure of McKay, that it would be utterly impossible for the defendants to have an opportunity to cross-examine this witness.

Such contention must have made an impression upon the mind of Justice Hasbrouck at Special Term, who

Supreme Court, December, 1917.          [Vol. 102.

said in effect by his order to the plaintiff, you may go on with your examination of McKay the day after to-morrow, which will be early Monday morning, but with the understanding that if this witness departs and does not return the defendants may have an opportunity, if they have been injured or prejudiced thereby, to move for a suppression of this deposition, without expressing any opinion with reference to whether such suppression should be ordered, leaving that to this court at this time under the motion here made.

There is little reason for extensive discussion of the rule which controls. It has been set down in the books for very many years, coming to us with the common law, that in effect a party cannot unless by his own fault be deprived a cross-examination.

It seems, therefore, that justice requires us here to determine that the deprivation of a further, adequate and proper cross-examination of the witness McKay was not because of the fault or waiver or negligence on the part of the defendants or their attorneys.

An order may, therefore, be entered granting the motion of the defendants to suppress the deposition of the witness McKay, with ten dollars costs.

Motion granted, with costs.